**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

TANNER HERZMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SMILE BRANDS INC. d/b/a BRIGHT NOW! DENTAL & ORTHODONTICS,

Defendant.

Case No. 25-cv-3400-H-BLM

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Date: April 20, 2026
Time: 10:30 a.m.
Ctrm: 12A
Judge: Hon. Marilyn L. Huff

# TABLE OF CONTENTS

**PAGES**


INTRODUCTION ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS ..... 4

A. Plaintiff Suffered A Concrete And Particularized Injury ..... 5

B. Defendant Received PII that Identified Plaintiff ..... 8

C. Plaintiff's Injury is Directly Traceable to Defendant's Conduct ..... 8

D. Plaintiff Has Standing to Seek Injunctive Relief ..... 9

II. PLAINTIFF'S SUFFICIENTLY STATES CLAIMS UNDER THE CALIFORNIA INVASION OF PRIVACY ACT ..... 9

A. Plaintiff's CIPA Claims Are Timely Under California's Delayed Discovery Doctrine ..... 9

B. Plaintiff States a Claim Under the Aiding and Abetting Prong of CIPA § 631(a) ..... 13

C. Plaintiff Sufficiently Alleges Google's Violation of the Second Prong of CIPA § 631(a) ..... 14

1. Google intercepted the contents of Plaintiff's communications. ..... 14

2. Google read or attempted to read Plaintiff's communications. ..... 15

3. Defendant never obtained Plaintiff's consent to eavesdrop. ..... 16

4. Interception occurred in transit. ..... 17

D. Plaintiff States A Claim For Violating Section 632 of CIPA ..... 17

III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF THE ECPA ..... 21

A. Defendant is Liable Under the Crime-Tort Exception For Violating HIPAA ..... 21

1. Plaintiff alleges an independent crime. ..... 21

2. Defendant acted with criminal or tortious purpose. ..... 22

B. Defendant Intercepted the "Contents" of Plaintiff's Communications. ..... 24

IV. PLAINTIFF STATES A CALIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........ 17

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 4

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 10

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ........ 6

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ........ 4

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 14, 15, 23

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 9, 14, 16, 18

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 19

*Camplisson v. Adidas Am., Inc.*,
--- F. Supp. 3d ----, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 3

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ........ 9

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. July 30, 2024) ........ 3

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. July 12, 2023) ........ 13, 17

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 24

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 16

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 6

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 10

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 18

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... passim

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 13

*Flanagan v. Flanagan*,
41 P.3d 575 (Cal. 2002) .......... 18

*Forman v. Davis*,
371 U.S. 178 (1962) .......... 25

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 5, 9

*Gabrielli v. Haleon US Inc.*,
--- F. Supp. 3d ----, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 5, 10

*Gaige v. Exer Holding Company, LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... passim

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 5, 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 15

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 25

*Hayden v. Retail Equation, Inc.*,
2022 WL 2254461 (C.D. Cal. May 4, 2022) ........................................................25

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025)..............................................................7

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (1994) ...............................................................................................25

*Howard v. Lab'y Corp. of Am.*,
2024 WL 4250677 (M.D.N.C. Aug. 8, 2024) ...........................................................2

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) ...........................................................7

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (gaming password)..................................................................8

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)...................................................................24

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...........................................................................5, 6, 24

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. Dec. 22, 2022)...........................................passim

*In re The Trade Desk, Inc. Data Privacy Litigation*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .....................................................................25

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......................................................................7

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)..................................................................................15

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .....................................................................6

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)...................................................................15

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)................................................................3

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 7

*Krztzek v. OpenX Techs., Inc.*,
--- F. Supp. 3d ----, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 5, 23

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 19

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)) .......... 8

*Lien v. Talkdesk, Inc.*,
2025 WL 551664 (N.D. Cal. Feb. 19, 2025) .......... 8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 25

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) .......... 2

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Luminate Home Loans, Inc. v. Better Mortg. Co.*,
2026 WL 549912 (S.D. Cal. Feb. 26, 2026) .......... 17

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 14

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) .......... 3

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) .......... 12

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. July 17, 2023) .......... 7

*Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 2

*Petris v. Sportsman's Warehouse, Inc.*,
736 F.Supp.3d 260 (W.D. Pa. June 3, 2024) .......... 5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....................3, 5

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024)....................7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................15

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ....................22, 23

*Ramirez v. LasikMD USA, Inc.*,
2026 WL 194855 (S.D. Cal. Jan. 26, 2026)....................2, 7, 9, 22

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ....................23

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................19

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)....................4

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ....................20, 21

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................18

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................20

*Spokeo, Inc. v. Robbins*,
578 U.S 330 (2016). ....................5

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................13, 24

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................19

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025)....................16

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024)....................19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................passim

*U.S. v. Jesenik*,
702 F. Supp. 3d 1024 (D. Or. 2023)....................20

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023)....................20

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011)....................20

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003)....................4

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025)....................7, 19, 22

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Santa Clara Super. Ct. Oct. 24, 2025)....................8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................15

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024)....................14

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010)....................10

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)....................23

**STATUTES**

18 U.S.C. § 2511....................21

18 U.S.C. § 2511(1)....................1

Cal. Civ. Proc. Code § 340(a) .......... 10

Cal. Pen Code § 630 .......... 1

Cal Pen Code § 631 .......... 19, 20

Cal. Pen Code § 631(a) .......... passim

Cal Pen Code § 632 .......... 19, 20

Cal. Pen Code § 632(c) .......... 18

**RULES**

Federal Rule of Civil Procedure 12(b)(6) .......... 4

**REGULATIONS**

45 C.F.R. §§ 160.103 .......... 6

45 C.F.R. §§ 164.502 .......... 6

45 CFR § 164.504 .......... 2

## INTRODUCTION

Defendant Smile Brands Inc. d/b/a Bright Now! Dental & Orthodontics ("Defendant" or "Bright Now") provides dental and orthodontic appointments through its website, www.brightnow.com (the "Website"). *See* Plaintiff's Class Action Complaint at ¶ 1 (ECF No. 1) ("Compl."). Defendant holds itself out as a trusted provider to those seeking medical and oral health treatment. But behind this seemingly compassionate digital front lies a troubling betrayal: while promoting a facade of care and confidentiality, Defendant secretly discloses sensitive and protected health information ("PHI"), including the specific dental treatments patients are seeking (dental implants, clear aligners, cosmetic dentistry, etc.) to Google, one of the world's largest advertising companies. Compl. ¶ 2, 5, 52. And Defendant does so without their patients' knowledge or consent. *Id.* ¶ 9. Defendant's conduct therefore violates the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq*., the California Invasion of Privacy Act ("CIPA"), Cal. Pen Code § 630, *et seq*., and the California Constitution.

This is not a disclosure made for true medical reasons. It is a calculated exploitation of patient data for commercial gain, fueling targeted advertising and enriching Defendant and Google in the process, at the expense of Defendant's patients. The intrusion is accomplished via complex computer code embedded on the Website that is entirely invisible to user patients. Defendant intentionally embedded Google's tracking technologies on its Website, which intercepts PHI as patients engage with the Website to book their dental appointments. Plaintiff, like countless others, used the Website to seek dental treatment. He had no reason to suspect that doing so would expose his private medical information to unknown third parties.

As a healthcare provider, Defendant is subject to strict duties under federal and state law, including the Health Insurance Portability and Accountability Act ("HIPAA"), which defines and protects individually identifiable health information

("IIHI"). This includes any data created or received by a healthcare provider that relates to a person's physical or mental health (including patient status) and identifies (or could reasonably be used to identify) that person. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791 (N.D. Cal. Dec. 22, 2022) ("I agree that the information at issue here appears to show patient status and thus constitutes protected health information under HIPAA."). This also includes disclosures made by Defendant's service providers and business associates. 45 CFR § 164.504. Moreover, Defendant's conduct flies in the face of its obligations as a healthcare provider.

Courts across the country, including those within this District, routinely recognize that disclosing protected health information without consent or authorization is unlawful. *See Ramirez v. LasikMD USA, Inc.*, 2026 WL 194855, at *2 (S.D. Cal. Jan. 26, 2026) (applying crime-tort exception "even where a defendant is arguably motivated by monetary gain."); *Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*, 2024 WL 4350328 at *4-5 (E.D. Pa. Sept. 30, 2024) (finding "intention to violate HIPAA sufficient to invoke the crime-tort exception to the ECPA."); *Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *6 (E.D. Va. Mar. 25, 2025) (holding "Plaintiff has properly alleged that INOVA violated HIPAA by using pixels on its website and Patient Portal" where plaintiff alleged defendant disclosed, via Google's tracking pixel on its website, "(1) status as medical patients; (2) communications with Inova Health through its websites and Patient Portal; and (3) information about their medical appointments" among other data); *see also Howard v. Lab'y Corp. of Am.*, 2024 WL 4250677, at *11 (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted,* 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (denying motion to dismiss WESCA claim based on similar wiretapping allegations); *Gaige v. Exer Holding Company, LLC*, 2025 WL 559719, at *5 (C.D. Cal. Mar. 2, 2025) (denying motion to dismiss ECPA claims where the plaintiff alleged that the defendant health care provider unlawfully disclosed PHI to Facebook without his

knowledge or consent); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (same); *Cooper v. Mount Sinai Health Systems, Inc.,* 742 F. Supp. 3d 369, 381 (S.D.N.Y. July 30, 2024) (same). The same outcome is warranted here.

This case is not about ordinary commercial data collection or the collection of generalized web analytics. It is about a medical provider betraying patient trust by allowing advertising platforms to surreptitiously collect and exploit health-related information disclosed in the course of seeking medical care. For the reasons detailed herein, Defendant's Motion should be denied.

**LEGAL STANDARD**

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Article III, a plaintiff must "have suffered an 'injury in fact' that is both 'concrete and particularized.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Concrete harms include tangible harms as well as intangible harms, so long as an intangible harm "bears a 'close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Camplisson v. Adidas Am., Inc.*, --- F. Supp. 3d ----, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (quoting *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "If the challenge to jurisdiction is a facial attack ... the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *2 (S.D. Cal. Oct. 9, 2015) (internal citation and quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS

To establish Article III standing, "a plaintiff must show that (i) [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423. Defendant challenges whether Plaintiff has satisfied the required elements. *See* MTD at 4. Plaintiff has done so.

### A. Plaintiff Suffered A Concrete And Particularized Injury

Defendant states that "Plaintiff fails to allege an injury-in-fact . . . because he fails to plausibly plead that his interaction with Smile's Website caused the disclosure of his identifiable, cognizably private information to Google." MTD at 6. This ignores Plaintiff's allegations.

The injury suffered by the plaintiff must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F.Supp.3d 260, 270-71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words…[i]t is not necessary…for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress are instructive." *Spokeo, Inc.*, 578 U.S. at 331. Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa*, 153 F.4th at 789 (quotations omitted). The Ninth Circuit is in accord, acknowledging that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted). This "right to privacy" includes an "individual's control of information concerning his or her person." *Id.* (quotations omitted); *see also Krztzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ----, 2026 WL 206855, at *2 (N.D. Cal. Jan. 27, 2026) (holding the same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (same); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) (same); *Gabrielli*

*v. Haleon US Inc.*, --- F. Supp. 3d ----, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (collecting cases) (same).

Healthcare providers, like Defendant, are prohibited from disclosing medical information. 45 C.F.R. §§ 160.103, 164.502. Patients who have had their protected information disclosed without their consent have suffered a harm akin to intrusion upon seclusion. *See TransUnion*, 594 U.S. 413 (claims for disclosure of private information and intrusion upon seclusion involve concrete injuries long recognized as providing a basis to sue); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person"); *Gaige*, 2025 WL 559719, at *2 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.") (internal quotations omitted).

Here, Plaintiff makes clear that Defendant enables Google's interception of "'Custom Events' and URLs that disclose[] the specific dental treatment being received by the patient." Compl. ¶ 75. This includes the specific information related to Plaintiff's appointment. *Id.* ¶ 10. Defendant also discloses "the city and state the appointment is in." *Id.* ¶ 89. This information becomes directly attributable to each induvial plaintiff when paired with patient PII, such as their "auid, cid, IP address, and device information"). *See id.* ¶ 90–92, 94–95; *see also Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *9 (N.D. Cal. Sept. 16, 2025) (finding most courts have found that Facebook IDs are PII).[1] These allegations are more than sufficient to invoke Article III standing. *See Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *4 (S.D. Cal. June 13, 2025) ("Plaintiff claims her right to privacy was violated when her PII and PHI were intercepted by third parties on Defendant's website, an injury that is concrete and particularized."); *see also James v. Walt*

[1] Google's user IDs (*i.e.* "cid" and "auid") correspond to unique, identifiable users in substantially the same manner as a Facebook ID does.

*Disney Co.*, 701 F. Supp. 3d 942, 950 (N.D. Cal. 2023) ("At the very least, Plaintiffs have made sufficient allegations to create a question of fact as to whether there is sufficiently personal information to support standing.").

Defendant argues that Plaintiff lacks standing merely because he omitted "the condition for which he was seeking treatment" and "the services he allegedly received from Smile." MTD at 6. In support of its argument, Defendant relies on *Mikulsky v. Noom, Inc.*, where this Court was "unable to determine" if a plaintiff's "lone conclusory allegation" alleged a protectable privacy interest. 682 F. Supp. 3d 855, 864 (S.D. Cal. July 17, 2023). However, *Mikulsky* does not require a plaintiff to specifically allege "the type of treatment he was seeking in the booking form." MTD at 6. Instead, a plaintiff need only allege the "nature of the information at issue." *Mikulsky*, 682 F. Supp. 3d at 864 (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014)). To require that Plaintiff allege his exact dental appointment details would only exacerbate the harm he complains of—the disclosure of his legally protected health information. As such, Plaintiff has satisfied his burden of alleging a privacy interest sufficient for Article III standing. *See* Compl. ¶¶ 11, 75, 89–98, 132. Other courts in this District have found comparable allegations to support the injury requirement. *See LasikMD USA, Inc.*, 2026 WL 194855, at *2.

The authority relied upon by Defendant is not dispositive, as those cases involve conclusory allegations related to the alleged disclosure of private information. *See Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *2 (S.D. Cal. Nov. 21, 2025) (failure to reveal any "information related to [plaintiff's] healthcare, conditions, or patient status"); *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (lone allegation that plaintiff visited website); *Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 13, 2024) (conclusory allegations of "personal information" without elaboration); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (failure to allege what personalized information was collected); *Khamooshi v. Politico LLC*,

786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (IP addresses only); *Lien v. Talkdesk, Inc.*, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) (phone numbers and retail store inquiries); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1053 (gaming password). Here, Plaintiff has specifically alleged the types of information disclosed by Defendant.

Defendant's remaining arguments concern questions of fact, which are not appropriately resolved at the pleading stage, where the Court must accept all allegations as true and draw all reasonable inferences in the plaintiff's favor. *Leite* 749 F.3d at 1121.

### B. Defendant Received PII that Identified Plaintiff

Defendant wrongly states that no identifiable information was disclosed to Google. MTD at 8. Plaintiff's allegations illustrate that Google receives each patient's "event data" alongside identifiers such as "auid, cid, IP address, and device information." Compl. ¶ 94. Moreover, because Google account holders (like Plaintiff) provide Google with their "full name, date of birth, and gender," Google is easily able to use the identifiers to pair with Google accounts on file. *Id.* ¶ 13.

### C. Plaintiff's Injury is Directly Traceable to Defendant's Conduct

Defendant provides the generalized argument that Plaintiff "fail[s] to plausibly allege a fairly traceable injury." MTD at 8. However, Defendant ignores Plaintiff's allegations that "Defendant . . . secretly intercepts and discloses Plaintiff's and Class Members' sensitive and confidential dental information to third parties." Compl. ¶ 8; *see also* ¶¶ 6, 9, 11–12, 15, 26, 64, 74–75, 82, 88–97, 129–35, 150; *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Santa Clara Super. Ct. Oct. 24, 2025) ("[I]t appears Defendant does not account for Plaintiff's allegation that it was responsible for the installation of the Trackers.").

Bright Now's fixation on the targeted advertisements Plaintiff received conflates the harm Plaintiff suffered with merely a symptom of that harm. The

"description of these advertisements or how they were 'targeted'" is irrelevant to Plaintiff's claims. MTD at 8. The harm alleged is Plaintiff's loss of control over his own private information. *TransUnion LLC*, 594 U.S. at 424; *Frasco*, 349 F.R.D. at 579 ("[T]he legal injury at the heart of plaintiffs' case — the capture of personal information without a user's consent — occurs when the personal information is obtained in the first instance."). This holds especially true when the type of information disclosed is medical in nature. *See LasikMD USA, Inc.*, 2026 WL 194855, at *2 ("The unauthorized disclosure of personally identifiable, confidential medical information is a sufficiently concrete and particularized harm for standing."). Even if Defendant's traceability argument has merit (it does not), Plaintiff has still met his burden. *See Gaige*, 2025 WL 559719, at *2 (finding allegations similar to Plaintiff's "sufficient for purposes of traceability").

### D. Plaintiff Has Standing to Seek Injunctive Relief

To establish standing for injunctive relief, plaintiffs must possess "continuing, present adverse effects." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983). Here, Plaintiff will continue to suffer if denied injunctive relief. Defendant still possesses Plaintiff's private information, and Google is still embedded in the manner described throughout the Complaint on the Website. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) ("Google's conduct has not stopped. Plaintiffs have demonstrated that absent an injunction, Google will continue to collect users' private . . . data for its own use"). Even if Plaintiff avoids the Website, he will still suffer harassment in the form of unwanted targeted advertisements based on Google's learning of his behavior.

## II. PLAINTIFF'S SUFFICIENTLY STATES CLAIMS UNDER THE CALIFORNIA INVASION OF PRIVACY ACT

### A. Plaintiff's CIPA Claims Are Timely Under California's Delayed Discovery Doctrine

Defendant argues that Plaintiff may not invoke the delayed discovery rule to toll CIPA's one-year statute of limitations. MTD at 11–12. Not so.

CIPA has a one-year statute of limitations. Cal. Civ. Proc. Code § 340(a). However, as conceded by Defendant, the delayed discovery rule tolls the statute of limitations where a plaintiff pleads facts which show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Gaige*, 2025 WL 559719, at *3 (quoting *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010)).

In wiretapping matters involving complex, online tracking technologies, the weight of authority favors the application of the discovery rule. *See, e.g.*, *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (applying the discovery rule "given the type of case this is – based on defendants' use of highly technical proprietary software"); *Haleon US Inc.*, 2025 WL 2494368, at *9 (following *Fullstory, Inc.* and applying the discovery rule where plaintiff could "not learn of the injury until shortly before filing" due to "defendant's use of highly technical software"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 853–54 (E.D. Cal. 2025) (finding plaintiffs properly pled facts to apply the delayed discovery rule where PHI and PII was disclosed to third parties "through the use of hidden tracking pixels"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (declining to dismiss case as time-barred where plaintiffs alleged that "[d]efendants secretly incorporated the Meta Pixel into their Web Properties").

*Gaige* is instructive. Just like the current matter, *Gaige* involved the unlawful disclosure of PHI and PII on a healthcare website. There, the court determined that the delayed discovery rule applied where:

> Plaintiff alleges that he did not know and had no way of knowing that his personally identifiable information ("PII") and/or personal health information ("PHI") was intercepted and unlawfully disclosed to Meta, Google, and potentially other third parties because Defendant kept this secret. Plaintiff became aware of the disclosure of this information in June 2024. The Court finds these allegations sufficient to allege tolling under the delayed discovery rule, as they

> allege the inability to have made the discovery earlier than June 2024 despite reasonable diligence.

2025 WL 559719, at *3 (cleaned up).

This is precisely what Plaintiff alleges here. For example, the Complaint states that:

> Plaintiff was ignorant of the information essential to pursue his claims, without any fault or lack of diligence on his part. Defendant had exclusive knowledge that the Website incorporated the Tracking Technologies . . . . Under the circumstances, Defendant was under a duty to disclose the nature, significance, and consequences of its collection and treatment of its users PII and PHI . . . . The earliest that Plaintiff, acting with due diligence, could have reasonably discovered Defendant's conduct would have been shortly before the filing of the initial complaint in this matter.

Compl. ¶¶ 102–04, 106.

Despite these well-pled allegations, Defendant both faults Plaintiff for his inability to decipher complex website traffic and attempts to take shelter in a cherry-picked provision of its privacy policy. MTD at 11. Defendant downplays the complexity of Google's technology, stating the "interceptions occurred publicly" through "HTTP get requests." MTD at 11. That is wrong and contradicts Plaintiff's well-pled allegations that such interceptions "are entirely invisible to a website visitor." Compl. ¶ 100. Plaintiff has satisfied his burden of alleging the time and manner of discovery and his inability for earlier discovery despite due diligence. The average patient or consumer, like Plaintiff, lacks the sophisticated, technological knowledge to decipher such invisible network traffic. *See id.* As such, Plaintiff had no reason to believe the advertisements he received were the result of an unlawful disclosure of protected health information. Indeed, there are countless reasons why Plaintiff would receive targeted advertisements for Defendant's services, none of which would necessarily indicate his PHI had been disclosed. Plaintiff only learned

through counsel's investigation that his PHI had been disclosed "shortly before the filing of the initial complaint." *Id.* ¶ 106.

Defendant's attempt at relying on its own privacy policy fails for several reasons. First, Plaintiff makes no mention of Defendant's privacy policy in his complaint, making it inappropriate for the Court's consideration here. This is especially true where Defendant does not request that the Court take judicial notice of its privacy policy nor does Defendant even attempt to show how its patients would have been put on notice of its privacy policy. Moreover, Defendant fails to establish that this was the same policy that would have been in effect during Plaintiff's visit to its Website. Nevertheless, even if the Court were to consider Defendant's privacy policy (it should not) it would find that Defendant affirmatively disclaims the disclosure of the protected information at issue here. For example, according to Defendant's privacy policy, Defendant expressly warrants "[w]e do not sell or share your ***Medical or Health Information***."[2] (emphasis added). Therefore, Plaintiff's belief that his information would be kept confidential was entirely reasonable.

Defendant's cited authorities are distinguishable, as neither case involved internet tracking technologies or a claim under CIPA. *See Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1155–57 (N.D. Cal. 2023) (finding delayed discovery inapplicable when Twitter notified plaintiff of the pertinent data breach nearly six years before the filing of the complaint); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1019 (C.D. Cal. 2020) (declining to apply the rule where a plaintiff admitted to being notified by a journalistic report of the alleged harm in 2017, but failed to file a complaint until 2019).

[2] *See* MTD at 11 fn 3 *U.S. Privacy Policy*, BRIGHT NOW! DENTAL & ORTHODONTICS, https://web.archive.org/web/20241003160028/https://www.brightnow.com/privacy-policy/#TOCLocation_4b ("**Medical and Health Information**, including . . . symptoms and reason for a visit . . .").

### B. Plaintiff States a Claim Under the Aiding and Abetting Prong of CIPA § 631(a)

Defendant claims it is not derivatively liable for aiding or abetting any underlying CIPA violation by Google. *See* MTD at 12. That is wrong.

The fourth prong of CIPA § 631(a) imposes derivative liability on any person "who aids, agrees with, employs, or conspires with any person" to cause any of the acts described in the first three clauses. Cal. Pen Code § 631(a). As an initial matter, "the statute as worded does not include an intent standard." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024). Courts in the Ninth Circuit have taken different approaches regarding what scienter is required. *Compare Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. July 12, 2023) (declining to read "aids, agrees with, employs, or conspires with as solely aiding and abetting") (quotations omitted), *with Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (reading in the "common law [civil tort] definition of aiding and abetting" to the derivative liability prong of CIPA). The common law definition is a more stringent pleading standard; a person may be held liable under it if they:

> know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act ***or*** give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Id.* at *6 (cleaned up) (emphasis added).

Plaintiff urges the Court to adopt the approach taken in *Cousin* "because it more closely follows the language of the statute." *St. Aubin*, 2024 WL 4369676, at *8 (following the approach adopted in *Cousin*).

However, Plaintiff's allegations are still more than sufficient to satisfy common law intent. In *Mata v. Zillow Grp., Inc.*, for example, a plaintiff alleged that his viewing history of available properties was transmitted by Zillow to Facebook.

2024 WL 5161955, at *1 (S.D. Cal. Dec. 18, 2024). Applying the same legal standard in *Esparza*, the Court found allegations that "Defendant knowingly programmed such third-party tracking technology into its website for advertising purposes" sufficient to plead a theory of aiding and abetting. *Id.* at *7 (quotations omitted) (collecting cases).

Here, Plaintiff substantially assisted Google because it "chose to embed Google's tracking technologies on the Website." Compl. ¶ 15. Moreover, as a provider of healthcare, Defendant possessed the knowledge that "the information handled on its Website is protected and confidential." *Id.* ¶ 84. However, Defendant disclosed protected information anyway because "Defendant profits by using the intercepted data for targeted advertising purposes." *Id.* ¶ 90. Nothing more is required.

### C. Plaintiff Sufficiently Alleges Google's Violation of the Second Prong of CIPA § 631(a)

Defendant contends that "Plaintiff fails to allege an underlying Clause Two violation by Google." MTD at 14. However, Plaintiff pleads each element.

#### 1. Google intercepted the contents of Plaintiff's communications.

Under both the ECPA and CIPA, courts interpret "content" as being "the intended message conveyed by the communication . . . not includ[ing] record information." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (quotations omitted); *see also Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta*, 647 F. Supp. 3d at 795. "Content" also includes "URLs" and "the particular document" requested. *Brown*, 685 F. Supp. 3d at 936. The statute itself provides little guidance. *Greenley*, 684 F. Supp. 3d at 1051. As one court put it, "CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers, whether

automatically generated or not." *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037–38 (S.D. Cal. 2024).

Plaintiff clearly alleges Google intercepts the content of the patient's communication, rather than mere record information. *See* Compl. ¶¶ 10–11, 75, 89–92. By intercepting full-length URLs, Google readily identified the reason for Plaintiff's dental visit. In other words, the "intended message" in the URLs is Plaintiff's attempt to seek specialized dental care. Defendant tries (and fails) to label Plaintiff's user-generated, medical searches as mere record information. MTD at 16. But every case Defendant cites is factually inapposite. None of the cases involve the creation of an appointment, much less a medical appointment. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (types of apps a user uses not deemed "content"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (anonymous session replay technology that only tracked record metrics as opposed to URLs, searches, or booking events); *Brodsky*, 445 F. Supp. 3d at 127 (user names and passwords not content).

And *In re Zynga Priv. Litig.* made clear that "[u]nder some circumstances, . . . a URL containing [a] search term to a third party could amount to disclosure of the contents of a communication." 750 F.3d 1098, 1108–09 (9th Cir. 2014). Since then, courts have made clear that full-string URLs, particularly when related to health information, qualify as 'contents.' *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 837; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902–03 (C.D. Cal. 2024).

**2. <u>Google read or attempted to read Plaintiff's communications.</u>**

Plaintiff leaves no doubt that Google reads Plaintiff's communications. Plaintiff explains, in great detail, that "Google views and processes every piece of information collected from the . . . tracking technologies." Compl. ¶ 81. By doing this, Google is able to improve its own products and services; each piece of information that it learns is used to "generate reports to help analyze" data and

ultimately "improve its ad targeting capabilities." *Id.* ¶¶ 62–63. Plaintiff even provides examples of the ways in which Google intercepts and reads each patient's communications in real time. *Id.*, Figures 1-2. The fact that Plaintiff received targeted advertising after visiting the Website only reinforces that Google read Plaintiff's communications with Defendant. *See id.* ¶ 12.

### 3. Defendant never obtained Plaintiff's consent to eavesdrop.

Defendant claims that because it consented to the implementation of Google's tracking technologies, Plaintiff is foreclosed from demonstrating Google eavesdropped. MTD at 17. Defendant ignores a key difference between the ECPA and CIPA. Unlike the ECPA, CIPA is a "two-party consent" statute. *Brown*, 685 F. Supp. 3d at 937; *see also* Cal. Pen Code § 631(a) (imposing liability on those "who willfully and without the consent *of all parties to the communication* . . .) (emphasis added). As such, Google would only be allowed to listen to Plaintiff and Defendant's communication if Plaintiff consented as well. Plaintiff's allegations make clear that Plaintiff never provided such consent. *See* Compl. ¶¶ 12, 15, 96–97. Defendant cannot claim that Google was a party to the communications, as Google utilized the intercepted communications for its own purposes. *See id.* ¶¶ 62–64, 68–72. Allegations that a third party "uses" intercepted communications for its own benefit are sufficient to establish illicit eavesdropping. *See, e.g.*, *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 956 (E.D. Cal. 2025) (finding a software vendor to be a third party eavesdropper merely because it possessed the ability to use the intercepted/recorded data); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1201–02 (S.D. Cal. 2024) (holding similar allegations that a third party vendor "use[d]" collected information for "financial gain" and its own "business purposes sufficient to establish eavesdropping).

#### 4. Interception occurred in transit.

Defendant's arguments concerning real-time interceptions fail as well. As to whether Google's reading of the communications happens "in transit," Plaintiff alleges that Google acquires communications "in real time, via detailed URLs, which contain the medically sensitive information." Compl. ¶ 92. This transmissions occur "in real time" because Google, as enabled by Defendant, "routed Plaintiff's . . . electronic communications to its servers." *Id.* ¶ 152. Plaintiff does not fail to allege a real time interception. In fact, many courts within the Ninth Circuit accept allegations of "in transit" interception at the pleadings stage. *See, e.g.*, *Cousin*, 681 F. Supp. 3d at 1131 ("Plaintiffs plead that communications were intercepted in transit sufficient to survive dismissal under Rule 12(b)(6). Defendant's arguments . . . are best left for resolution at the summary judgment stage."). Plaintiff even provides examples of Google reading patient communications in real time. *See* Compl., Figures 1-2.

Lastly, Plaintiff does allege facts that "demonstrate . . . interception occurred in California." MTD at 17. According to Plaintiff, he "was residing in this District when he accessed the Website and had the Tracking Technologies installed on his device." Compl. ¶ 17.

### D. Plaintiff States A Claim For Violating Section 632 of CIPA

Defendant argues that "Plaintiff's § 632 claim fails for three reasons." MTD at 17. All three of Defendant's arguments lack merit.

***First***, Defendant relies on *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *11 (S.D. Cal. Aug. 19, 2024) to argue that "§ 632 does not apply to internet communications." *Id.* However, Defendant confuses two entirely different provisions of CIPA. The provision contemplated in *SelectQuote Ins. Servs.* is § 632.7(a) of the CIPA, which prohibits the interception of communications ***between telephones***. 2024 WL 3881850, at *11 (emphasis added). Here, Plaintiff states a

claim under § 632(a) of CIPA, which has no such limitation. *See* Compl. ¶¶ 156, 161; *see also Luminate Home Loans, Inc. v. Better Mortg. Co.*, 2026 WL 549912, at *6–7 (S.D. Cal. Feb. 26, 2026) (examining a claim under CIPA § 632(a) and denying defendants' 12(b)(6) motion to dismiss).

***Second***, Defendant argues that "Plaintiff does not and cannot allege he engaged in 'confidential communications,' within the meaning of § 632." MTD at 17. As an initial matter, there is no presumption that internet-based communications are not confidential. *Brown*, 685 F. Supp. 3d at 938 ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Smith v. Google, LLC*, F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (same). Instead, a communication is confidential under § 632 so long as a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P.3d 575, 582 (Cal. 2002). The proper inquiry "is whether 'any party to the communication desires for it to be confined to the parties thereto.'" *Brown*, 685 F. Supp. 3d at 938 (citing Cal. Pen Code § 632(c)).

Plaintiff clearly alleges that he reasonably expected his communications regarding his dental care would remain confidential. *See* Compl. ¶¶ 12, 96–97, 139, 159–60, 164–65 ("When communicating with Defendant, Plaintiff . . . had an objectively reasonable expectation of privacy, based on HIPAA."). Additionally, courts have routinely recognized communications as being "confidential" when show to be sensitive under applicable laws, regulations, or industry norms. *See, e.g.*, *In re Meta*, 647 F. Supp. 3d at 799 (finding communications containing PHI to be confidential); *Smith*, 735 F. Supp. 3d 1188, 1199–200 (N.D. Cal. 2024) (holding sensitive financial information submitted on a tax preparation website to be confidential). Nowhere is this more apparent than in the context of medical information. *See Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform . . . seeking

treatment for specific conditions . . . constitute confidential communications.") (collecting cases). Here, the information disclosed was confidential PHI. *See* Compl. ¶¶ 6, 9, 11, 15, 28, 37, 75, 89. On the face of the Complaint, Defendant violates HIPAA in at least two ways: (1) by revealing patient status with Defendant and (2) by revealing specific treatment sought. *See id.* ¶ 90 ("The information disclosed to Google by Defendant allows Google to discern the identities of specific individuals in addition to the reason they are booking an appointment."); *see also Wright*, 2025 WL 3248749, at *2 (stating that plaintiffs must allege interactions that "relate to the provision of healthcare, or that the information connects a particular user to a . . . particular healthcare provider.") (quotations omitted). And even if the Court were to impose a "presumption" that online communications are not confidential under § 632, Plaintiff would still overcome it. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *18 (N.D. Cal. Oct. 10, 2025) ("[C]ommunications made in the context of a patient-medical provider relationship are readily distinguishable from online communications in general.") (quotation omitted).

Defendant's cited authorities are readily distinguishable, as none of its cited authorities involve online communications between a patient and provider of medical care. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) (concerning the chat function of a retail website); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024) (same); *Revitch v. New Moosejaw*, LLC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (concerning browsing activity on a retail website); *Rodriguez v. Google LLC,* 2021 WL 2026726 (N.D. Cal. May 21, 2021) (concerning the use of third party applications); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) (concerning messages sent on Facebook).

***Third***, Defendant wrongly states that it cannot "eavesdrop on [its] own conversation," and that "Section 632 does not expressly provide for the same derivative liability found in § 631(a)." MTD at 19.

However, § 632 allows for derivative liability. "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal Pen Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025). As a result, § 31, when applied to § 632, "allows for [Defendant] to be viewed as a principal whether or not [it] physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *see also Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) (same). Therefore, courts "can look to whether the defendant, at a minimum, intended for a surreptitious recording of confidential information to occur in her presence or participated in the recording." *Vaccaro*, 2023 WL 7003211, at *5 (quotations omitted).

Defendant provides no reason why CIPA § 632 should not be interpreted in this manner. Defendant's argument that the section should not be read to include its derivate liability "under the doctrine of avoiding surplusage" is unjustified. MTD at 19. Not only does Defendant's lone citation not involve a CIPA claim, but the argument misinterprets the primary purpose of the Surplusage Canon. *See U.S. v. Jesenik*, 702 F. Supp. 3d 1024, 1034 (D. Or. 2023) (defining the doctrine as one that "advises a court to avoid reading a statute in such a way as to make superfluous several words found in the text of that statute"). But as Defendant notes, "Section 632 does not expressly provide for the same derivative liability found in § 631(a)." MTD at 19. Even if Defendant believes, rather, that such a reading would render the language of § 631(a) superfluous, it has not shown that such a reading would "cause[] it to duplicate another provision or to have no consequence." *Jesenik*, 702 F. Supp. 3d at 1034, n.8 (quotations omitted).

Furthermore, Defendant misstates the scienter imposed by § 632 of CIPA. In Defendant's view, it can only be held liable if it "knowingly agree[d] or implement[ed] Google's tracking tools for the purpose of violating § 632." MTD at

20. Defendant cites to *Smith v. YETI Coolers, LLC*, which imposed the civil liability standard for aiding and abetting. 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024). However, Plaintiff's allegations go beyond the allegations in *Smith* and demonstrate Defendant's knowledge and participation. *See* Compl. ¶ 98 ("Defendant . . . implemented a system that surreptitiously tracked and recorded Plaintiff's . . . confidential communications"); ¶ 103 ("Defendant had exclusive knowledge that the Website incorporated the Tracking Technologies"); ¶ 170 ("Defendant . . . installed the tracking technology onto the Website"); ¶ 34 (listing the ways in which Defendant's use of the Tracking Technologies violated HIPAA). Nothing more is required. *See Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 ("[I]t is plausible to infer from Rack Room's alleged affirmative act of integrating the third-party code into its website that it knew Meta and Attentive would intercept [PII] and that Rack Room had the purpose . . . to do so.").

## III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF THE ECPA

### A. Defendant is Liable Under the Crime-Tort Exception For Violating HIPAA

Under the ECPA, 18 U.S.C. § 2511, a party to the communication is shielded by the "party exemption." *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 848. However, this exemption "has its own carve-out known as the crime-tort exception." *Id.* (quotation omitted). Defendant argues that the crime-tort exception does not apply because (1) "the alleged crime must be independent of the intentional act of recording or interception" done (2) "for the purpose of committing an underlying criminal or tortious act." MTD at 22 (quotations omitted). Defendant falls squarely within the exception.

#### 1. <u>Plaintiff alleges an independent crime.</u>

"[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communications for the purpose of a tortious or criminal act that is *independent* of the . . . recording or interception itself." *Gaige*, 2025 WL

559719, at *5 (emphasis in original) (quotations omitted). According to Defendant, Plaintiff's allegations fail because the transmission of PHI is "both an 'interception' under the ECPA and a wrongful disclosure in violation of HIPAA." MTD at 22. Defendant misinterprets the "separate and independent" component of the statute. *See R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025). In Defendant's view, its violation of HIPAA is excused because it occurred simultaneous to the underlying interception. And yet, "[i]t is irrelevant that [Defendant] allegedly disclosed the Private Information at the same time as its interception." *Id.* Here, the independent harm stems from Defendant's disclosure of "Plaintiff's . . . electronic communications to affiliates and other third parties, while knowing or having reason to know that the information was obtained through [] interception." Compl. ¶ 133; *see also* ¶¶ 134–39 (explaining how Defendant discloses HIPAA-protected information to third parties independent of its receipt of health information). As such, Plaintiff sufficiently pleads that Defendant's "intentional *disclosure* of the collected Private Information . . . constitutes a further impropriety independent . . . from [its] *interception*. *R.S.*, 2025 WL 103488, at *5 (emphasis in original); *see also LasikMD USA, Inc.*, 2026 WL 194855, at *3.

Defendant's reliance on *Wright* is misplaced. MTD at 22. The contention that *Wright* holds "an alleged HIPAA violation is insufficient to demonstrate a tortious or criminal act" is a gross overstatement. *Id.* In *Wright*, the plaintiff's conclusory allegations were insufficient to infer any interception of PHI whatsoever. 2025 WL 3248749, at *3. Moreover, the Court dismissed the ECPA claim specifically for failing to allege an interception of 'content' information. *Id.* Plaintiff makes clear Defendant's actions are in violation of HIPAA. *See* Compl. ¶¶ 11, 89–92, 132.

**2. <u>Defendant acted with criminal or tortious purpose.</u>**

Defendant claims it cannot have acted with a criminal or tortious purpose when it was motivated by marketing efficiency or financial gain. This argument has been thoroughly rejected by numerous courts within the Ninth Circuit, including

courts within this District. *LasikMD USA, Inc.*, 2026 WL 194855 at *3 (finding "that even where a defendant is arguably motivated by monetary gain, the tort or crime exception may apply."). It should be no different here.

Defendant cites to authorities which have held that "a profit-motivated advertising purpose does not satisfy the [crime-tort] exception." MTD at 23 (citing *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025); *In re Meta*, 647 F. Supp. 3d at 797). However, the greater weight of authorities contradicts these holdings. *See, e.g.*, *Krztzek*, 2026 WL 206855, at *8 ("The Court is not persuaded by the authorities OpenX's cites to argue financial motives cannot constitute tortious motive."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) ("[C]omitting a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)"); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 850 ("The court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA.").

To illustrate the problematic reasoning of accepting Defendant's argument, *R.S.* is instructive:

> Take blackmail, which the Ninth Circuit gave as an example of an ECPA violation. Under Prime Healthcare's reading, the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money. There, the interceptor's primary purpose would be to make money. And blackmail would merely be a means by which to make money. Of course, this is often the end goal for blackmail. Under Prime Healthcare's reading, blackmail would rarely, if ever, violate the ECPA. This cannot be the case.

2025 WL 103488, at *7 (cleaned up).

Accordingly, Defendant should not be shielded from its criminal or tortious violations simply because it was motivated by pecuniary gain.

**B. Defendant Intercepted the "Contents" of Plaintiff's Communications.**

As set forth in § II.C.1, *supra*, Plaintiff sufficiently alleges that Defendant intercepted the "contents" of his communications. *See, e.g.*, *Brodsky*, 445 F. Supp. at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

## IV. PLAINTIFF STATES A CALIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

Defendant contends Plaintiff does not sufficiently allege an invasion of privacy claim under the California Constitution because (1) Plaintiff did not possess "a reasonable expectation of privacy" and (2) Defendant's actions were not "an egregious breach of social norms." MTD at 23–24. Incorrect.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. As a matter of law, Plaintiff possessed a reasonable expectation of privacy in his HIPAA-protected health information. *See St. Aubin*, 2024 WL 4369675, at *12 ("It is well-settled under California law that, although not absolute, people have a privacy interest in their medical history and information.") (quotations omitted); *Gaige*, 2025 WL 559719, at *7 (finding an intrusion of a reasonable expectation of privacy when PHI was disclosed to third-party digital advertisers); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 843 (same).

As to offensiveness, courts are hesitant to resolve "[w]hether an alleged intrusion is highly offensive" at the motion to dismiss stage. *See, e.g.*, *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023). However, courts have been in agreement that the disclosure of PHI is particularly "egregious[]." *In re Meta*, 647 F. Supp. 3d at 800; *see also Tenet Healthcare Corp.*, 789 F. Supp. 3d at 844 (finding disclosure of web searches for conditions, treatments, and doctors highly offensive) (collecting cases). Defendant's actions both flout legislative intent and accepted social norms. *See In re Meta*, 647 F. Supp. 3d at 800–01 ("Congress

has made policy decisions regarding the importance of safekeeping this information."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) ("Courts have refused to dismiss invasion of privacy claims . . . where, as here, a data breach involved medical information").

Defendant's cited authorities fail to disturb these accepted holdings, because none of them involve the disclosure of medical information. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (holding the disclosure of LinkedIn IDs and URLs of profile pages was not highly offensive); *Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022) (finding that tracking the frequency or duration of app usage was not highly offensive); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014) (concerning basic digital information); *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 669 (1994) (concerning the ability to drug test collegiate athletes); *see also Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *8 (C.D. Cal. May 4, 2022) (denying defendants' motion to dismiss plaintiffs' invasion of privacy claim).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety. Alternatively, if the motion is granted in any respect, Plaintiff requests he be given leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.'").

Dated: March 16, 2026

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131

Telephone: (305) 330-5512
Facsimile: (305) 679-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*